IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GABRIEL G. RAMIREZ,

                              Plaintiff,                              OPINION AND ORDER

    v.
                                                                     15-cv-365-wmc
L. KRANSKI and SWEEN,

                              Defendants.

*Pro se* plaintiff Gabriel Ramirez is proceeding to trial against defendants, Dane County Jail Deputies Lacey Kranski and Zachary Sween, on a claim that they violated his Fourteenth Amendment rights by using excessive force against him during a cell extraction at the Dane County Jail on November 12, 2014.  In advance of the final pretrial conference to be held on June 18, 2021, via videoconference ("FPTC"), the following opinion and order addresses:  the trial schedule; plaintiff's motion seeking additional information from defense counsel (dkt. #123); defendants' motions *in limine* (dkt. #110); and related matters.  Additionally, the court circulates proposed orientation remarks, voir dire, jury instructions and special verdict.

OPINION

## I.  Trial start

The court has two trials scheduled to begin Monday June 28, 2021.  In order for both trials to proceed as scheduled, the court will have the parties and Magistrate Judge Crocker conduct the voir dire and pick the jury for this trial on Monday, while I conduct the other jury trial, then commence the actual jury trial on Thursday before me.  If the

parties have any scheduling conflicts or other concerns with this approach, they should come prepared to discuss them.

## II. Plaintiff's motion (dkt. #123)

Ramirez asks that the court direct defense counsel to turn over the affidavit that was served with the video footage produced in this lawsuit, as well as identify each deputy involved in the November 12, 2014, use of force incident.  As to his first request, it appears that Ramirez may want a copy of the affidavit filed with the court on May 21, 2021, *see* dkt. #106, which he represents was not provided to him.  The court will direct the clerk of court to provide Ramirez a copy of that affidavit, along with this order and the court's standard trial materials.

As for his second request, Ramirez states that he wishes to identify all John and Jane Doe defendants that were involved in the use of force.  Not only is it too late for Ramirez to seek this discovery, but he already has the information.  Over two years ago, the court issued its opinion and order denying defendants' motion for summary judgment and dismissing the Doe defendants, since Ramirez had yet to identify them.  In particular, the court noted that Ramirez was already in a position to identify other individuals involved in the use of force and name them as defendants, since the incident reports related to the events that took place November 12, 2014, *included* the names of the additional jail employees involved.  (Dkt. #67, at 8-9.)  However, the court declined to amend Ramirez's complaint on its own to include additional defendants, especially because Ramirez's submissions had not been clear as to who else he may wish to proceed against.  Instead,

2

the court indicated its willingness to permit him to amend his complaint to proceed against additional individuals involved in the use of force, provided he do so by formal motion. (*Id.* at 8-9 n.4.)

Although Ramirez was represented by recruited counsel from November 14, 2019, to August 7, 2020, neither Ramirez's counsel nor Ramirez took the court up on that offer. As importantly, more than ten months have passed since the court granted his counsel's motion to withdraw and Ramirez has still not moved to proceed against any additional deputies involved in the incident.  Accordingly, the court will not require defendants to provide Ramirez the names of these individuals, and will deny Ramirez's motion in full.

### III. Defendants' Motions in Limine ("MIL")

Defendants seek 12 in limine rulings, which the court addresses in turn.

### MIL #1:  Preclude evidence of insurance

Defendants seek to exclude any evidence suggesting that they may have insurance covering plaintiff's claim, including prohibiting plaintiff from asking potential jurors about any connection they may have to insurance or insurance companies.  Under Rule 411, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."  Fed. R. Evid. 411.  While the rule allows the admission of evidence for other purposes, defendants are correct that none appear relevant here.  Accordingly, defendants' MIL #1 is GRANTED.

### MIL #2: Preclude evidence of indemnification

Defendants  similarly  seek  to  preclude  plaintiff  from  addressing  any  right  to

3

indemnification at trial.  For the same reasons that plaintiff will be precluded from presenting evidence of insurance, he will be precluded from presenting evidence of indemnification.  Defendants also seek to prevent plaintiff from arguing that the jury should "send a message" to Dane County or the Sheriff's Department with its verdict because punishment is not a legitimate basis for a compensatory damages award.  However, if the jury determines that defendants' conduct was malicious or in reckless disregard of plaintiff's rights, it may choose to award punitive damages, which *are* designed to punish and make an example of the defendant.  As such, plaintiff may argue that the jury should "send a message," but only with respect to these defendants' conduct, only in his closing argument, *and* only if the court permits him to seek punitive damages.  Accordingly, defendants' MIL #2 is GRANTED in part and DENIED in part.

**MIL #3: Preclude settlement offers or negotiations**

Defendants next seek to preclude evidence of any settlement offers or negotiations between the parties.  Rule 408 prohibits the admission of offers of and negotiations to compromise for purposes of "prov[ing] or disprov[ing] the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Since the court is unaware of any permissible use of evidence of potential settlement in this case, defendants' MIL #3 is GRANTED.

**MIL #4: Preclude reference to other claims**

Invoking Federal Rule of Evidence 403, defendants further seek to preclude reference to any other claims, lawsuits, or proceedings brought against defendants, Dane

4

County, the Sheriff's Department or any other County official or employee, because those other proceedings are irrelevant, prejudicial, and confusing to the jury.   In general, defendants are correct that the probative value of this type of evidence is "substantially outweighed" by the risk of undue prejudice, confusing the issues, wasting time and possibly misleading the jury.   *See* Fed. R. Evid. 403.   Accordingly, absent plaintiff's showing of relevance to some specific piece of evidence or testimony *outside the presence of the jury*, defendants' MIL #4 is GRANTED.

### MIL #5: Preclude Inflammatory Statements, Testimony, Argument, or Evidence

Defendants seek to preclude reference to or evidence of "adverse or publicized events involving law enforcement, including, but not limited to, 'police shootings,' 'excessive force,' 'abuse of authority,' police misconduct' or 'blue walls of silence.'"   (Dkt. #111, at 5.)   The probative value of any evidence of these unrelated incidents is "substantially outweighed" by the risk of unfair prejudice, confusion of the issues, wasted time, and misleading jury.   *See* Fed. R. Evid. 403.   As for generic comments equating the events in this case as an example of a larger problem in closing argument, the court will not preclude it provided those arguments are confined to reason and good faith argumentation, particularly if punitive damages remain in the case.   Should plaintiff cross that admittedly somewhat uncertain line, the court will admonish that it is only the defendants' conduct that is at issue.

Defendants similarly seek to exclude evidence or reference to race and inflammatory language, including but not limited to any comment that Ramirez stated, "I can't breathe"

as well as any comment that the defendants used "excessive force." (Dkt. #111, at 7.) Defendants maintain that since there is no evidence that their conduct was motivated or influenced by race, such evidence or commentary is irrelevant. They further assert that Ramirez should not be able to submit evidence that he told the officers "I can't breathe," having never testified that he made such a statement to the deputies and such evidence would be unduly prejudicial given the use of this phrase in nationwide use-of-force protests. Absent any proffer from Ramirez that he can testify in good faith that either of the defendant's was motivated by his race, or that he actually indicated to either defendant that he could not breathe while they were restraining him, the court agrees that such evidence would be irrelevant. However, the court is willing to hear from Ramirez during the FPTC if he is able to make such a proffer.

Finally, defendants seek an order prohibiting any testimony that defendants Kranski and Sween used excessive force, since plaintiff has not identified any experts in this case. While plaintiff may testify about his own perceptions about the events that took place during the cell extraction, including his own lay opinion as to the amount of force used, the court agrees that he is not qualified to express any expert opinions as to whether defendants used excessive force. Accordingly, MIL #5 is GRANTED in part and RESERVED in part as provided above.

### MIL #6: Prohibit Plaintiff from Asking the Jury to Sympathize with Him

Defendants seek to prevent the plaintiff from asking the jury to return a verdict that reflects their sympathy for plaintiff, such as asking the jurors to place themselves into

Ramirez's shoes or to consider how much money they would pay to avoid the pain and suffering he alleges. This so-called "Golden Rule" is a standard evidentiary prohibition and will be enforced here as well. Moreover, the court's instructions address the concern that the jury would improperly sympathize with the plaintiff. (*See* Closing Instructions at 1 ("[Y]ou should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another."), 6 ("There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate the plaintiff for the injury he has sustained."). Accordingly, defendants' MIL #6 is GRANTED.

### MIL #7: Admit Evidence of Prior Convictions

Defendants provide notice of their intent to introduce evidence of plaintiff's criminal convictions, as well as the criminal convictions of Gary Nelson, who they believe Ramirez will identify as a witness. Federal Rule of Evidence 609 governs the admission of evidence of criminal convictions used for impeachment of "a witness's character for truthfulness," stating that evidence of a felony conviction "must be admitted, subject to Rule 403, in a civil case" if the conviction or release from confinement for the conviction occurred less than 10 years before. Fed. R. Evid. 609(a)(1)(A), 609(b).

Defendants note that plaintiff has felony convictions, or convictions for crimes punishable for more than one year, within the past ten years for: (1) stalking resulting in bodily harm, strangulation and suffocation, false imprisonment with domestic abuse and as a repeater, and battery with domestic abuse as a repeater, *State v. Ramirez*, Case No. 2014 CF2286 (Dane Cty.); and (2) threats to injury/accuse of a crime and knowingly

violating a domestic abuse order as a repeat offender and with domestic violence, *State v. Ramirez*, Case No. 2015CF518 (Dane Cty.).  Plaintiff is currently serving his sentence from Case No. 2015CF518, which was consecutive to the sentence that had been imposed in Case No. 2014CF2286.  Since ten years have obviously not passed since his completion of the sentence for either conviction, the only remaining question is whether Rule 403 balancing favors admissibility.

Defendants maintain that the Rule 403 balancing favors admissibility because:  (1) they are relevant to plaintiff's credibility, which is central to his claims against defendants; (2) the convictions would not confuse the issues or arouse emotions of the jurors; and (3) his prior convictions bear on the veracity of any claim that he suffered emotional distress. Defendants' second contentions is not well-taken, so the real question is whether the likely prejudice here outweighs the relevance to assessing the plaintiff's credibility or claim of emotional distress.   On balance, the court concludes that the following questions are appropriate to ask plaintiff on cross examination for impeachment purposes:

1) "On January 6, 2017, you were convicted of stalking resulting in bodily harm, strangulation and suffocation, false imprisonment with domestic abuse as a repeat offender, and battery with domestic abuse as a repeat offender, correct?"

2) "On January 6, 2017, you were convicted of threats to injury/accuse of a crime and knowingly violating a domestic abuse order as a repeater and with domestic violence, correct?"

Unless plaintiff answers "no," defense counsel may not inquire further or be allowed to introduce other evidence related to these convictions.   Moreover, the jury will be admonished that it may consider these convictions only for purposes of assessing defendants' character for truthfulness, or if emotional distress damages are claimed, but

not for propensity.  Should defendant answer "no" to either question, then defense counsel shall first impeach with proof of that conviction, and if defendant persists in denying either conviction, the court will consider admission of such proof into evidence.

As for Gary Nelson, defendants indicate that he is a witness housed in plaintiff's cell block during the November 12, 2014, incident, so they seek to impeach him with evidence of seven convictions.  However, Ramirez has not disclosed Nelson as a witness, so the court need not evaluate the admissibility of this evidence.  Accordingly, defendants' MIL #7 is GRANTED in part and DENIED in part.

### MIL #8: Preclude Reference to Permanent Future Harm

Defendants move to prevent plaintiff from presenting evidence or argument that the November 12, 2014, incident here resulted in permanent or future physical or mental harm without expert testimony supporting that assertion.  Defendants are correct that plaintiff must submit expert testimony to establish causation and the permanence of any injury because such conclusions are outside a layperson's expertise.  That said, Ramirez is free to testify about his own perception and lay opinion of his physical and mental health before and after the incident, provided that it is not presented as an expert opinion.  Additionally, should plaintiff claim psychological harm, this may open the door to defendant introducing causation evidence relating to other incidents.  Accordingly, defendants' MIL #8 is GRANTED in part and DENIED in part.

### MIL #9: Prohibit Evidence of Current Physical or Mental Injury

Defendants also seek to preclude evidence of plaintiff's current physical and/or

mental injury, including any emotional pain and suffering related to the incident at issue, from October of 2017 to the present.  Defendants explain that although plaintiff authorized disclosure of his medical records up until October 2017, plaintiff has resisted allowing defendants access to his more recent medical records.  Indeed, defendants filed a motion to compel plaintiff to provide an updated and executed authorization for his medical records, and on May 11, 2021, Judge Crocker granted that motion, advising plaintiff that his failure to provide updated medical authorizations may cause the court to limit his damages.  (*See* dkt. 102, at 2-3.)

Despite this ruling, defendants represent that plaintiff has not provided updated medical authorizations to defendants, so they have been unable to gather any medical records to evaluate any claim that plaintiff still suffers from a physical or mental injury from the November 12, 2014, use of force incident from October 2017 to the present. Consistent with Judge Crocker's warning then, it would be unfair for plaintiff to pursue damages for medical or mental health issues while simultaneously precluding defendants from examining his medical records.  The court further agrees that it is now too late for plaintiff to agree to disclose those records.   Accordingly, MIL #9 is GRANTED. Additionally, the court will modify the compensatory damages instruction consistent with this ruling.

### MIL #10: Prohibit Reference to Discovery Issues

Defendants next seek to preclude evidence or argument about discovery disputes, including any reference to plaintiff's access to the jail video.  Mainly, defendants seek to prevent plaintiff from testifying or arguing about the Dane County Jail's initial refusal to

provide the video footage to Ramirez.  The court agrees any reference to discovery disputes have no relevance to the issues that the jury will be asked to decide, and only stands to waste time and create confusion.  Accordingly, defendants' MIL #10 is GRANTED.

### MIL #11: Preclude Evidence of Emotional Distress Damages

Next, defendants seek to preclude plaintiff from pursuing compensatory damages for emotional distress, arguing that his general claim of such distress is insufficient based on his own testimony alone.  Yet plaintiff is free to testify about his own perceived mental and physical health before and after the incident.  Accordingly, these arguments go to the weight of plaintiff's evidence, not its admissibility, and defendants' MIL #11 is DENIED.

### MIL #12: Prohibit any Claim for Punitive Damages

Finally, defendants seek to prevent plaintiff from pursuing punitive damages, arguing that there is simply no evidence to support such a claim.  To recover punitive damages, plaintiff must show that defendant acted with "evil motive or intent" or with "reckless or callous indifference" to his constitutional rights.  *Smith v. Wade*, 461 U.S. 30 (1983).  If the jury believes plaintiff's version of events -- that he was following orders and not resisting defendants' when they were restraining him --it could also find that defendants acted with a malicious intent to injure plaintiff or in reckless or callous indifference to his rights.  Accordingly, defendants' MIL #11 is DENIED.

## IV.   Voir Dire, Jury Instructions and Special Verdict

Attached to this order are the court's proposed voir dire, jury instructions and

special verdict form.  The court anticipates that the trial will not be bifurcated.  The court will discuss these materials with the parties during the FPTC.

The court has generally accepted defendants' proposed questions and instructions, most of which are similar to the court's standard questions and instructions.  However, the court did not adopt defendants' proposed instruction for the definition of "unreasonable," which includes the following language from *Kingsley v. Hendrickson*, 135 S. Ct. 2246, 2473 (2015):  "You must further account for the legitimate interests that stem from the government's need to manage the correctional facility in which the individual is detained, appropriately deferring to policies and practice that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security."  This additional language is not part of the Seventh Circuit's Pattern Instruction, *see* 7th Circuit Pattern Instruction Civil 7.10, and appears better suited for argument than instruction.  While likely to be excluded, should they wish, the court will hear argument from defendants with respect to this specific language during the FPTC.

## V.    Exhibits

Defendants intend to introduce the following exhibits:  (1) Dane County Jail surveillance video maintained in Dane County Sheriff's Office Case No. 140371914, from November 12, 2014; (2) Dane County Sheriff Department Security Services Manual Section 603.4, titled "Cell Roster Counts" apparently in place in November 2014; (3) Dane County Sheriff Department Security Services Manual Section 603.08, titled "Prison Counts," which was in place in November 2014; (4) Dane County Jail Inmate Handbook

12

in place November 2014; (5) certified judgment of conviction for *State v. Ramirez*, Case No. 2014CF2286; (6) certified judgment of conviction for *State v. Ramirez*, Case No. 2015CF518. Defendants indicate they may introduce: (1) Dane County Sheriff's Office Incident Report and Supplemental Reports for Incident Number 140371914; (2) Dane County Sheriff's Use of Force Review for October 21, 2015; (3) Excerpts of Ramirez's medical records from four, different providers; and (4) certified judgments of conviction for Nelson. Ramirez has not objected.

As for the two judgments of conviction, these exhibits appear unnecessary and may be unduly prejudicial to provide to the jury. Again, defendants may impeach Ramirez with the two questions that confirm his conviction as set forth above. However, unless Ramirez refused to acknowledge these convictions, the court intends to exclude any reference to these exhibits. Additionally, the court does not expect to allow Nelson to testify at trial, so those judgments of conviction will likely be excluded as well.

As for the remaining exhibits, the court does not view them as obviously problematic, and Ramirez has not objected. The court expects defendants to submit these exhibits to Ramirez and the court before the FPTC, at which point the court will give Ramirez one more opportunity to raise concerns with respect to each exhibit.

## VI.   Witnesses

Defendants disclosed their witnesses, to which Ramirez has not objected. Ramirez has not disclosed any witnesses, nor has he submitted any requests for the court to issue a subpoena or a writ for the appearance of an incarcerated witness. Accordingly, the court

is highly unlikely to permit Ramirez to call any witnesses beyond himself but will not completely foreclose that possibility until the FPTC.   If Ramirez wants to call any witnesses, he must be prepared during that conference with: (1) an explanation for his failure to disclose his proposed witnesses in accordance with the deadlines set by Judge Crocker in January; and (2) the names, current addresses, and proffer of testimony of any proposed witnesses other than himself.

ORDER

IT IS ORDERED that:

1)  Plaintiff's motion to release affidavit and provide names of deputies (dkt. #123) is DENIED.

2)  Defendants' motions in limine (dkt. #110) are GRANTED IN PART, DENIED IN PART, and RESERVED in part as set forth above.

3)  The clerk of court is directed to send plaintiff a copy of dkt. #106 along with this order.

Entered this 16th day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

<u>INTRODUCTORY INSTRUCTIONS</u>

Members of the jury, we are about to begin the trial of the case.  Before it begins, I will give you some instructions to help you understand how the trial will proceed, how you should evaluate the evidence, and how you should conduct yourselves during the trial.

The party who begins the lawsuit is called the plaintiff. In this action, the plaintiff is Gabriel Ramirez.  The party against whom the suit is brought is called the defendant.  In this action, the defendants are Dane County Jail Deputies Lacey Kranski and Zachary Sween.  On November 12, 2014, plaintiff Gabriel Ramirez was being held at the Dane County Jail.  Early that morning, jail employees were conducting the morning head count, and Ramirez did not follow directions to put on his jail uniform.  As a result, several jail employees, including defendants, Deputies Zachary Sween and Lacey Kranski, entered Ramirez's cell to place him in segregation for refusing to follow jail policy.  A physical struggle followed, and ultimately Ramirez was placed in handcuffs, a spit hood was placed over his head, and he was secured to a restraint chair.  Ramirez claims that defendants used excessive force throughout this encounter in violation of his Fourteenth Amendment due process rights.  Defendants Sween and Kranski deny any wrongdoing, claiming that their use of force was an appropriate attempt to restore order and security within the jail.

**<u>Order of Trial</u>**

The case will proceed as follows:

<u>First</u>, Mr. Ramirez will make an opening statement outlining his case.  Immediately after plaintiff's statement, defendants' counsel will also make an opening statement

1

outlining defendants' case.  What is said in opening statements is not evidence; it is simply a guide to help you understand what each party expects the evidence to show.

Second, after the opening statements, Mr. Ramirez will introduce evidence in support of his claims. At the conclusion of Mr. Ramirez's case, the defendants may introduce evidence.  The defendants are not required to introduce any evidence or to call any witnesses.  If the defendants introduce evidence, Mr. Ramirez may then introduce rebuttal evidence.

Third, after the evidence is presented, I will instruct you on the specific law that you are to apply in reaching your verdict.

Fourth, Mr. Ramirez and defense counsel will make closing arguments explaining what they believe the evidence has shown and what inferences you should draw from the evidence.  What is said in closing argument is also not evidence.  You will ultimately be asked to decide what the evidence proves or does not prove.  Mr. Ramirez has the right to give the first closing argument, because he generally has the burden of proof, and to make a short rebuttal argument after the defendants' closing argument.

Fifth, you will retire to the jury room and begin your deliberations.

**Burden of Proof**

You have heard and will hear the term "burden of proof" used during this trial.  In simple terms, the phrase "burden of proof" means that the party who makes a claim has

2

the obligation of proving that claim.  At the end of the trial, I will instruct you on the proper burden of proof to be applied in this case.

**Breaks and Recesses**

The trial day will generally run from 8:30 a.m. until 5:30 p.m., unless the case appears at risk of going beyond its promised length, in which case I may ask you to arrive a little earlier or stay later.  You will have at least an hour for lunch and two additional short breaks, one in the morning and one in the afternoon.  During breaks and recesses, as well as the end of each day, please keep in mind the following instructions:

First, do not discuss the case either among yourselves or with anyone else during the course of the trial.  The parties to this lawsuit have a right to expect from you that you will keep an open mind throughout the trial.  You should not reach a conclusion until you have heard all of the evidence, have heard Mr. Ramirez and defense counsel's closing arguments and my instructions to you on the law, and have retired to deliberate with the other members of the jury.  Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors.  After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

Second, I know that many of you use cell phones, and other tools of technology to access the internet and to communicate with others.  I must warn you, in particular, against commenting about the trial, talking to anyone about this case or using these tools to

3

communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, tablet or other device, using email, text messaging, any blog or website, through any internet chat room, or by way of any other social networking sites or applications, including Twitter, Facebook, Instagram, My Space, LinkedIn, YouTube, or any other media whatsoever. There have been news accounts recently about cases that have had to be re-tried because a member of the jury communicated electronically about the case during the trial.  You can imagine what this would mean in the cost of a re-trial, the inconvenience to your fellow jurors whose work would have been for nothing and the stress experienced by the parties.

Third, do not permit any person to discuss the case in your presence.  If anyone tries to talk to you despite your telling him not to, report that fact to the court as soon as you are able.  Do not discuss the event with your fellow jurors or discuss with them any other fact that you believe you should bring to the attention of the court.

Fourth, although it is a normal human tendency to converse with people with whom one is thrown in contact, please do not talk to any of the parties or the attorneys or witnesses.  By this I mean not only do not talk about the case, but do not talk at all, even to pass the time of day.  In no other way can all parties be assured of the absolute impartiality they are entitled to expect from you as jurors.  The parties, attorneys and witnesses are similarly admonished, so please don't be offended when they avoid interactions with you.

4

Fifth, you, as jurors must decide this case based solely on the evidence presented here within the four walls of this courtroom.  No matter how interested you may become in the facts of the case, you must not do *any* independent research, investigation or experimentation.  This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, read newspapers, listen to the radio or television if they might relate in any way to the parties or issues in this lawsuit.  And, again, I would especially admonish you regarding the use of internet, especially search engines, websites, blogs, or any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.  If an internet or newspaper headline catches your eye, or a television news lead catches your ear, do not examine the article or listen further.  For anyone familiar with the facts of a story, you know that media accounts tend to be incomplete at best and often inaccurate at worst.  Internet accounts are even worse.  News accounts or internet blogs may also contain matters that are not proper for your consideration as a matter of law.  However imperfect they may be, the rules of evidence have been developed over hundreds of years for a reason: they are the best means we've come up with to provide parties a fair hearing.  For this reason, you are required to base your verdict solely on the evidence produced in court.

## Credibility of Witnesses

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.  It is proper for a lawyer to meet with a witness in preparation for trial, if the witness is willing to do so.

## Objections

During the trial, you will hear Mr. Ramirez and defense counsel make objections to certain questions or to certain answers of the witnesses.  When they do so, it is because they believe the question or answer is legally improper and they want me to rule on it.  Do not try to guess why the objection is being made or what the answer would have been if the witness had been allowed to answer it.

If I tell you not to consider a particular statement that has already been made, put that statement out of your mind and remember that you may not refer to it during your

deliberations.  Again, there are good reasons that certain evidence is excluded and it is important that you respect these rulings and directions.

Finally, I have a duty to caution or warn a party or his counsel who does something that I believe is not in keeping with the rules of evidence or procedure.  You are not to draw any inference against the side whom I may caution or warn during the trial.

## Questions

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

If you wish to ask a question about something you do not understand, write it down on a separate slip of paper.  If, when Mr. Ramirez and defense counsel have finished all of their questioning of the witness, the question is still unanswered to your satisfaction, raise your hand, the bailiff will take your written question from you.  I will then review it, show it to plaintiff and defense counsel, and decide whether it is a question that can be asked. If it cannot, I will tell you that.  I will try to remember to ask about questions after each witness has testified.

## Notetaking

If you want to take notes, there are notepads and pencils for taking notes next to the jury bench.  This does not mean you have to take notes; take them only if you want to and if you think they will help you to recall the evidence during your deliberations.  Do not let notetaking interfere with your important duties of listening carefully to all of the

7

evidence and of evaluating the credibility of the witnesses.  Keep in mind that just because you have written something down it does not mean that the written note is more accurate than another juror's mental recollection of the same thing.  No one of you is the "secretary" for the jury, charged with the responsibility of recording evidence.  Each of you is responsible for recalling the testimony and other evidence.

Although you can see that the trial is being reported, you should not expect to be able to use trial transcripts in your deliberations.  You will have to rely on your own memories.

## Evidence

Evidence at a trial includes the sworn testimony of the witnesses, exhibits admitted into the record, facts judicially noticed, and stipulated facts.  You may consider only evidence that is admitted into the record.

In deciding the facts of this case, you are not to consider the following as *evidence*: statements and arguments of the plaintiff and defense counsel, questions and objections of plaintiff and defense counsel, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Evidence may be either direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another

fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

## Contradictory or Impeaching Evidence

A witness may be discredited by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe any witness has been discredited, it is up to you to decide how much of the testimony of that witness you believe.

If a witness is shown to have given false testimony knowingly, that is voluntarily and intentionally, about any important matter, you have a right to distrust the witness's testimony about other matters.  You may reject all the testimony of that witness or you may choose to believe some or all of it.

The general rule is that if you find that a witness said something before the trial that is different from what the witness said at trial you are to consider the earlier statements only as an aid in evaluating the truthfulness of the witness's testimony at trial.  You cannot consider as evidence in this trial what was said earlier before the trial began

There are two exceptions to this general rule.  The first is for witnesses who are the actual parties in the case.  If you find that any of the parties made statements before the trial began that are different from the statements they made at trial, you may consider as

9

evidence in the case whichever statement you find more believable.  The second is for statements made in earlier depositions by witnesses who are now unavailable.

**[Depositions**

During the course of trial Mr. Ramirez and defense counsel may refer to and read from depositions.  Depositions are transcripts of testimony taken from witnesses while the parties are preparing for trial.  Deposition testimony is given under oath, just like the testimony at this trial.  You should give it the same consideration you would had those witnesses testified here in court.]

**Drawing of Inferences**

You are to consider only the evidence in the case.  But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts you find have been proved, such reasonable conclusions as seem justified in the light of your own experience and common sense.

I hope that for all of you this case is interesting and, ultimately, a gratifying experience.  We will now hear opening statements from the parties.

10

## ORIENTATION REMARKS AND VOIR DIRE TO JURY PANEL

I am Judge Conley.  You are here for possible jury service in case no. 15-cv-365-wmc: *Gabriel Ramirez v. Deputy Lacey Kranski and Deputy Zachary Sween*.  Many people approach jury service with apprehension and anxiety, no doubt added to by the current COVID-19 pandemic, but if each of us does our job, most people end up feeling that jury service was a worthwhile, even gratifying, experience.

The United States Courthouse that you entered this morning is not the judges' courthouse; it is not the lawyers' courthouse; it is not even the litigants' courthouse.  This is your courthouse and your system of justice.  Indeed, this building belongs to the public; and it is important that each of us keep in mind that the public's business is being conducted here.

To be able to continue to serve you better, we seek your input, not just in the case before us but in a larger sense.  Each of you has a stake in this system.  When this trial concludes you will not only be asked to rule on this case, but also to tell us anonymously what we did right and what we did wrong.  We cannot serve the public and improve our system of justice without each of your valuable contributions.

Other than by paying taxes and voting, service on a jury is probably the most important duty that most of us will undertake in support of our system of government.  Only by realizing how unique our system of justice is, and how dependent it is on good people like you, can we truly understand and appreciate it.

Trial by jury has been eliminated in many countries of the world.  The United States justice system is the place where most of the jury trials in the world are now held.  Contrary

1

to general belief, because of the jury's role, we actually have the highest involvement of non-lawyers of any justice system in the world. That is a heritage handed down by the people who founded our country. I cannot describe its importance any better than the U.S. Supreme Court Justices did in the video you watched in advance, so I won't try.

Instead, I will emphasize in a few sentences your crucial role as jurors in this trial. My job as judge is to decide legal questions, and your job as jurors is to decide fact questions. The judge decides what kind of evidence is admissible and instructs the jurors at the end of the trial as to the law that they must apply in deciding the case. These instructions provide a "legal yard stick" by which the jurors must measure the evidence in order to decide the case, but the jurors decide what the facts are -- that is, they decide from the evidence admitted at trial what actually happened. An important part of the jurors' job is to decide what testimony to believe and what testimony not to believe. In deciding what actually happened, the jurors are searching for the truth. Many people in fact define a trial as a search for the truth.

The trial begins with "Voir Dire," which literally means from the Latin and French "to speak the truth" or "to inquire." Consistent with these definitions, the purpose of voir dire is to ask a series of questions of jury panel members and to obtain candid, truthful responses to help insure that we seat a jury comprised of impartial individuals -- a fundamental right of both parties. Accordingly, I would ask that all prospective jurors socially distanced in the gallery should listen carefully as they may be called and asked the same or similar questions.

The deputy clerk will now swear the entire jury panel.

## VOIR DIRE

1.  To begin, I just want to reintroduce you to our court personnel:

    A.  Judge William Conley

    B.  Deputy Clerk Joanne Friedl

[*after introduction, inquire if anyone on the jury knows either*]

    <u>Statement of the case:</u>  On November 12, 2014, plaintiff Gabriel Ramirez was being held at the Dane County Jail.  Early that morning, jail employees were conducting the morning head count, and Ramirez did not follow directions to put on the jail uniform.  As a result, several jail employees, including defendants, jail deputies Zachary Sween and Lacey Kranski, entered Ramirez's cell to place him in segregation for refusing to follow jail policy.  A physical struggle followed, and ultimately Ramirez was placed in handcuffs, a spit hood was placed over his head, and he was secured to a restraint chair.  Ramirez claims that defendants used excessive force throughout this encounter, in violation of his Fourteenth Amendment due process rights.  Defendants Sween and Kranski deny any wrongdoing, claiming that their use of force was an appropriate attempt to restore order and security within the jail.

    a.  Have any one of you ever heard of this case before today?  How?  When?

    b.  When you heard about it, did you form any opinion concerning the case?

    c.  Do you believe that your ability to serve impartially as a juror in this case has been affected by what you have heard about it?

2.  The trial of this case will begin today and will be completed by tomorrow.  The trial day will generally run from 9:00 a.m. until 5:00 p.m., though we may begin slightly earlier or go later if necessary to ensure completion within the promised time frame.  You will have at least an hour for lunch and two additional, shorter breaks of 15-20 minutes, one in the morning and one in the afternoon.  Is there any one of you who would be unable to serve as a juror during this time for any reason, including vision, hearing or other health limitations?

3.  Plaintiff should stand and introduce himself.  *Ask panel whether anyone knows him.*

4.  Defendants' counsel to stand and tell the jury where they practice and with whom, identify other attorneys directly involved in representing defendants, *and* introduce defendants.  *Ask panel whether anyone knows counsel, their associates or partners, or defendants.*

3

5.  The following people are also involved in this case and may be called as witnesses. Please raise your hand if you know any of these people:

   a.  Seth Wollenzien

   b.  Brian Riley

   c.  Ryan Brandon

   d.  Mellisa Widenfeld

   e.  Michael Haure

   f.  Mika Webber

   g.  Kerry Porter

   h.  Mary Voek

   i.  Heidi Gardner

6.  COVID-19 Questions:

   a) To the best of your knowledge, have you or someone in your household been exposed to COVID-19 within the past 14 days?

   b) As you know, we have taken all reasonable steps we can practically in this courtroom to maintain social distancing, including separating you physically, and asking that you wear masks and excuse yourself if you have been exposed in the last 14 days to anyone who has tested positive for COVID-19 *or* you have yourself exhibited symptoms of that disease. In addition, most, if not all, court personnel are fully vaccinated. Still, any indoor gathering continues to carry a risk of contracting the disease. Moreover, should you contract COVID-19, the United States Center for Disease Control and Prevention has said in particular that individuals aged 65 and older *or* with one of the following conditions may be at risk for more severe complications: moderate to severe asthma, chronic kidney disease being treated with dialysis, chronic lung disease, diabetes, hemoglobin disorders, immunocompromised, liver disease, people in nursing homes or long term care facilities, serious heart conditions, and obesity. To your knowledge, are you or a member of your immediate household in any of these risk categories? If so, do you think this fact will impact your ability to be an effective juror during the course of this trial or during deliberations with your fellow jurors?

   c) Finally, each of you should notify the court immediately if, during trial, you

4

experience any symptoms consistent with COVID-19 or are exposed to anyone who has contracted COVID-19.  Anyone who would be uncomfortable with fulfilling that obligation?

7.  Questions to prospective jurors individually:

   a.  Please stand up and tell us about yourself.

   b.  Examples:

      i.  Name, age, and city or town of residence.

      ii.  Where born and raised.

      iii.  Marital status and number of children, if any.

      iv.  Current occupation (former if retired).

      v.  Current (or former) occupation of your spouse or domestic partner.

      vi.  Any military service, including branch, rank and approximate date of discharge.

      vii.  How far you went in school and major areas of study, if any.

      viii.  Memberships in any groups or organizations.

      ix.  Hobbies and leisure-time activities.

      x.  Favorite types of reading material.

      xi.  Favorite types of television shows, movies, music, blogs or other entertainment.

      xii.  Bumper stickers, letters to editor or call in to radio or TV show.

      xiii.  Regular contributor to any blogs, online discussion groups or online chat rooms.

      xiv.  Primary source of news.

8.  Past court experience:

   a.  Have any of you ever been a party to a lawsuit?  Describe circumstances.

5

b. Have any of you ever been a witness in a lawsuit?

c. How many of you have served previously on a jury?  Of those of you who have, please describe your experience.  Were you ever the foreperson on a jury?

9.  Other general questions:

a. Do any of you know any of the other persons on the jury panel?

b. Have you or anyone close to you ever worked in a law firm or taken law classes?

c. Does anyone have any strong positive or negative feelings about lawsuits in general?

10.  Case-related knowledge or experience (follow up "yes" answers at side bar, if necessary):

a. The plaintiff was a prisoner during the time period relevant to his claims.  Does anyone have a strong positive or negative opinion about prisoners that might make it difficult for you to be objective in this case?  Similarly, defendants are jail deputies.  Does anyone have a strong positive or negative opinion about jail employees that might make it difficult for you to be objective in this case?

b. Does anyone believe that prisoners do not, or should not, have any constitutional rights?

c. Does anyone believe that prisoners should not be allowed to file lawsuits?

d. Does anyone have any doubt that an incarcerated person should be treated fairly and humanely?

e. Have you or anyone close to you ever been confined in a jail or prison?

f. Have you ever visited a jail or prison?

g. Have you formed any strongly held opinions about the correctional system or the appropriateness of confining people in prison or jail?  Does anyone believe the State of Wisconsin is too soft on crime?  Too harsh?  *If so, would this opinion likely affect your ability to be objective in this case?*

h. More specifically, this case involves the use of force against a person confined at a jail.  Do you have strong opinions about the use of force against those in correctional institutions or jails?  (follow up "yes" answers with side bar if

6

necessary).

    i.   Have you or anyone close to you ever been employed in law enforcement or correctional services?

    j.   Have you or anyone close to you ever been an employee of Dane County?

    k.   Have you or anyone close to you ever had a negative experience dealing with a county employee, a person who works in corrections, or a law enforcement officer?

    l.   Have you or anyone close to you ever been employed by or volunteered in any aspect of criminal prosecution or defense work, including with a County Prosecutor's office, Public Defender's Office, or with any type of support or advocacy group for those prosecuting crimes, victims of crimes or those charged with or convicted of crimes?

    m.   Have you or anyone close to you been the victim of a crime?

    n.   Do you have strong opinions, *either positive or negative*, with respect to the "George Floyd," "Jacob Blake," "Black Lives Matter," or "Defund the Police" protests that might make is difficult for you to be objective in this case?  (follow up "yes" answers with side bar if necessary)

11. This case involves a Mexican-American man accusing two white correctional officers of excessive use of force against him.  Given these facts, will it be difficult for you to serve as an impartial juror to *both* sides in this case?

12. At the end of the case, I will give you instructions that will govern your deliberations. You are required to follow those instructions, even if you do not agree with them. Would any of you be unable or unwilling to follow my instructions?

13. Should the evidence support it, would anyone have any difficulty in awarding damages in this case in a substantial amount?  Similarly, should the evidence support it, would anyone have any difficulty in awarding *no* damages or a small amount of damages?

14. Do you know of any reason whatsoever why you could not sit as a trial juror with absolute impartiality to all the parties in this case?

    •   *Side bar for follow up questions or strikes for cause*

- *Exercise preemptory challenges (3 per side)*

- *Instruct on recesses during exercise of challenges*

- *Swear in jury*

## CLOSING INSTRUCTIONS

**A. Introduction**

Members of the Jury:

You are about to hear closing arguments of the parties.  Before these arguments, I will instruct you on the law.  After closing arguments, I will provide very brief instructions governing your deliberations.  After that, the case will be in your hands.

As I told you at the outset of this trial, my job is to decide what rules of law apply to this case and to explain those rules to you.  Your job is to follow the rules, even if you disagree with them or don't understand the reasons for them.  You must follow all of the rules; you may not follow some and ignore others.

The case will be submitted to you in the form of a special verdict consisting of 7 questions.  [Read special verdict form.]  In answering the questions, you should consider only the evidence that has been received at this trial.  Do not concern yourselves with whether your answers will be favorable to one side or another, *or* with what the final result of this lawsuit may be.  Also, do not answer questions needlessly.

**1.  Burden of proof**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  On the questions in the special verdict, the burden of proof is on the party contending that the answer to a question should be "yes."  You should base your decision on all of the evidence, regardless of which party presented it.

### 2. Absence of Evidence

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

### 3. Limited Purpose of Evidence

You will recall that during the course of this trial, I instructed you that I admitted certain evidence for a limited purpose.  You must consider this evidence only for the limited purpose for which it was admitted.

### 4. Direct and Indirect Evidence

Evidence may be either direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

### 5. Answers Not Based on Guesswork

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof. Your answers are not to be based on guesswork or speculation. They are to be based upon credible evidence from which you can

find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

### 6.  Lawyer Interviewing Witness

It is proper for a lawyer to meet with any witness in preparation for trial, if they are willing to do so.

### 7.  All persons equal before the law

Plaintiff Ramirez is a prisoner, and defendants are current or former county law enforcement officers.  As I told you at the outset of trial, all parties are equal before the law.  You must give each party the same fair consideration that you would give any other person.

### 8.  [Impeachment by Conviction of Crime

You have heard evidence that plaintiff Ramirez [and witness Gary Nelson has/have] been convicted of crimes.  You may use that evidence only to help you decide whether to believe plaintiff [and that witness] and how much weight to give his testimony.]  To the extent that plaintiff is asking for emotional damages, you *may* also consider his convictions only in deciding to what extent the events at issue caused the emotional injury.

### 9.  Multiple Defendants and Requirement of Personal Involvement

You must give separate consideration to each claim and each party in the case.  Although there are two defendants, it does not follow that if one is liable, the other is also liable.  Plaintiff must prove by a preponderance of the evidence that Lacey Kranski and Zachary Sween were

*each* personally involved in the conduct that plaintiff complains about.  You may not hold either Kranski or Sween liable for what others did or did not do, including each other.

### 10.    Police Department/Municipality Not a Party

Defendants Lacey Kranski and Zachary Sween are being sued as individuals.  Neither Dane County nor the Dane County Sheriff's Office is a party to this lawsuit.

## B.   Special Verdict

### 1.    Question No. 1 and Question No. 2

The Fourteenth Amendment of the United States Constitution protects pretrial detainees from excessive force by jail officials.  Accordingly, to succeed on his claim that defendants used excessive force against him, plaintiff Ramirez must prove each of the following *two* things by a preponderance of the evidence, as to the defendant you are considering:

> 1.   The defendant you are considering used unreasonable force against plaintiff Ramirez; and
>
> 2.   The defendant acted under color of law.

As to the first element, in performing his or her job, an officer can use force that is reasonably necessary under the circumstances.  In deciding whether the defendant used unreasonable force, you should consider all of the circumstances.  Circumstances you may consider include the need for the use of force, the relationship between the need for the use of force and the amount of force used, the extent of plaintiff Ramirez's injury, any efforts made by the defendant you are considering to temper or limit the amount of force,

the severity of the correctional issue, the threat reasonably perceived by the officer(s), and whether plaintiff Ramirez was actively resisting.

You must decide whether the force used by the defendant was unreasonable from the perspective of a reasonable officer facing the same circumstances that the defendant faced. You must make this decision based on what that defendant knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether or not the use of force by the defendant was unreasonable, you must not consider whether the defendant's intentions were good or bad.

[As to the second element, a person who is employed by the government acts "under color of law" if he or she uses or misuses authority that he or she has because of his or her official position. A person may act under color of law even if he or she is violating a local law or policy.]

If you find that Ramirez has proved both elements of his claim by a preponderance of the evidence as to defendant you are considering, then you should answer "Yes" to the Special Verdict Question pertaining to that defendant.

If, on the other hand, you find that Ramirez has failed to prove either of these elements by a preponderance of the evidence for the defendant you are considering, then you should answer the Special Verdict Question pertaining to that defendant "No."

**Question No. 3: Compensatory Damages**

If you answer Special Verdict Question No. 1 *and* Question No. 2 "No," then you should not answer *any* of the questions about damages. However, if you answer Special

5

Verdict Question No. 1 *or* 2 "Yes," then you must determine the amount of money that will fairly compensate plaintiff Ramirez for any injury that you find he sustained as a direct result of an excessive use of force.

Ramirez must prove his damages by a preponderance of the evidence.  In this case, Ramirez is entitled to damages for the period of time between November 12, 2014, and October 2017.  He is not entitled to compensatory damages for any injuries after October 2017.  Your award of damages must be based on evidence, not speculation.  This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of the injury, even if they are not easy to measure.

If you find that Ramirez has proved by a preponderance of the evidence that he suffered a physical injury, then you also may award damages for any mental or emotional injury that Ramirez suffered as well.  If you find that Ramirez did *not* suffer a physical injury, then you may not award damages for mental or emotional injury.  Instead, you must enter a nominal damages award in the amount of one dollar ($1).

You should consider the following types of compensatory damages, and no others: the physical, mental, and emotional pain and suffering, disability, and/or loss of a normal life that Ramirez has experienced and is reasonably certain to experience in the future caused by an excessive use of force.  No evidence of the dollar value of physical, mental, and emotional pain and suffering, disability, and/or loss of a normal life has been or needs to be introduced.  There is no exact standard for setting the damages to be awarded on

6

account of pain and suffering.  You are to determine an amount that will fairly compensate Ramirez for the injury he sustained that was caused by either or both defendants.

**Question Nos. 4-7: Punitive Damages**

Whatever your award as to compensatory damages, you must also consider if an award of punitive damages is appropriate for any defendant that you found liable under Questions 1 or 2.  The purposes of punitive damages are to punish a defendant for his or her conduct and to serve as an example or warning to defendant and others not to engage in similar conduct in the future.  You may assess punitive damages only if plaintiff Ramirez has proven that the individual defendant's conduct was malicious or in reckless disregard of plaintiff's rights.  Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring plaintiff.  Conduct is in reckless disregard of plaintiff's rights if, under the circumstances, defendant simply did not care about plaintiff's rights.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages.  Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but they should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of defendant's conduct;

- the impact of defendant's conduct on plaintiff;

- the relationship between plaintiff and defendant;

7

• the likelihood that defendant would repeat the conduct if an award of punitive damages is not made; and

• the relationship of any award of punitive damages to the amount of actual harm plaintiff suffered.

<u>**DELIBERATIONS INSTRUCTIONS**</u>

1. **Introduction**

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence, the law and the arguments, I will give you the instructions that will govern your deliberations in the jury room.  The decision you reach in the jury room must be unanimous.  In other words, you must all agree on the answer to each question.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.  If you have formed any idea that I have an opinion about how the case should be decided, disregard that idea.  It is your job, not mine, to decide the facts of this case.

2. **Selection of Presiding Juror; Communication with the Judge; Verdict**

When you go to the jury room to begin considering the evidence in this case you should first select one of the members of the jury to act as your presiding juror.  This person will help to guide your discussions in the jury room.

You are free to deliberate in any way you decide or select whomever you like as a presiding juror.  When thinking about who should be presiding juror, you may want to consider the role that the presiding juror usually plays.  He or she serves as the chairperson during the deliberations and has the responsibility of insuring that all jurors who desire to speak have a chance to do so before any vote.  The presiding juror should guide the discussion and encourage all jurors to participate. I encourage you at all times to keep an open mind if you ever disagree or come to conclusions that are different from those of your fellow jurors.  Listening carefully and thinking about the other juror's point of view may

help you understand that juror's position better or give you a better way to explain why you think your position is correct.

Once you are in the jury room, if you need to communicate with me, the presiding juror will send a written message to me.  <u>However</u>, do <u>not</u> tell me how you stand as to your verdict, numerically or otherwise on the issue submitted.

As I have mentioned before, the decision you reach must be unanimous; you must all agree.

When you have reached a decision, the presiding juror will sign the verdict form, put a date on it, and all of you will return with the verdict into the courtroom.

### 3.  Suggestions for Conducting Deliberations

In order to help you determine the facts, you may want to consider discussing one question at a time, and use my instructions to the jury as a guide to determine whether there is sufficient evidence to prove all the necessary legal elements for each claim or defense.  I also suggest that any public votes on a verdict be delayed until everyone has a chance to say what they think without worrying what others on the panel might think of their opinion.  I also suggest that you assign separate tasks, such as note taking, time keeping and recording votes to more than one person to help break up the workload during your deliberations.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GABRIEL G. RAMIREZ,

                        Plaintiff,                         SPECIAL VERDICT FORM

        v.

LACEY KRANSKI and
ZACHARY SWEEN,                                             15-cv-365-wmc

                        Defendants.

        We, the jury, for our special verdict, do find as follows:

**QUESTION NO. 1**: Did defendant Lacey Kranski violate plaintiff Gabriel Ramirez's

Fourteenth Amendment rights on November 12, 2014?

                        _____
                        ("Yes" or "No")

*Move on to Question No. 2.*

**QUESTION NO. 2**:  Did defendant Zachary Sween violate plaintiff Gabriel Ramirez's

Fourteenth Amendment rights on November 12, 2014?

                        _____
                        ("Yes" or "No")

*If you answer "Yes" to Question No. 1 or Question No. 2, then answer Question No. 3.  If you
answer "No" to Question No. 1 and Question No. 2, do not answer any more questions.*

**QUESTION NO. 3:**  What amount of money, if any, do you award as compensatory damages for damages plaintiff Ramirez  sustained as a result of an excessive use of force?

Answer: $_____

*Move on to Question No. 4.*

**QUESTION NO. 4:**  Did plaintiff Ramirez prove by a preponderance of the evidence that he is entitled to punitive damages against defendant Kranski?

_____
("Yes" or "No")

*If you answer "Yes" to Question No. 4, then answer Question No. 5.  If you answer "No" to Question No. 4, move on to Question 6.*

**QUESTION NO. 5:** What amount of money, if any, do you award as punitive damages against defendant Kranski?

Answer: $_____

**QUESTION NO. 6:**  Did plaintiff Ramirez prove by a preponderance of the evidence that he is entitled to punitive damages against defendant Sween?

_____
("Yes" or "No")

*If you answer "Yes" to Question No. 6, then answer Question No. 7.  If you answer "No" to Question No. 4, then do not answer any more questions.*

**QUESTION NO. 7:** What amount of money, if any, do you award as punitive damages against defendant Sween?

Answer: $_____

_____
Presiding Juror

Madison, Wisconsin

Date: _____